IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SUSAN WESSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-561-JHP-FHM |
| | ) | |
| JANE PHILLIPS MEDICAL CENTER & | ) | |
| AFFILIATES EMPLOYEE GROUP | ) | |
| HEALTHCARE PLAN, PREMIUM PLAN; | ) | |
| BMI-HEALTHPLANS; and JANE PHILLIPS | ) | |
| MEDICAL CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION & ORDER

Before the Court in this ERISA action[1] is Defendant BMI-HealthPlans, Inc.'s Motion for Summary Judgment (Docket No. 40, hereinafter "Motion for Summary Judgment"), Plaintiff Susan Wesson's Response thereto (Docket No. 51, hereinafter "Response"), and BMI-HealthPlans Inc.'s Reply to Plaintiff's Response (Docket No. 55, hereinafter "Reply"). For the reasons cited herein, BMI-HealthPlans, Inc's Motion for Summary Judgment is GRANTED.

FACTS

A.   Undisputed Factual Background[2]

Throughout 2005 and 2008, the relevant years in this case, Plaintiff was an employee of Defendant Jane Phillips Medical Center ("JPMC"), and was a participant in JPMC's group health plan ("Plan"). *See generally* Admin. Rec., Docket Nos. 32, 37, 64 (hereinafter "Admin. Rec."). In April 2005, Plaintiff underwent a Roux-en-Y gastric bypass weight loss surgery to treat obesity. *See id.* at 18-19. The 2005 bypass surgery was covered by the Plan and benefits were paid to the extent of the Plan's maximum lifetime treatment coverage of $15,000 for morbid obesity. *Id.* 15-16, 105. In 2008, Plaintiff experienced health problems such as depression, lack of appetite, acid reflux, inability to keep solid foods

---

[1] The parties have stipulated that this case is governed by ERISA. Joint Status Report at 3, Docket No. 26.
[2] The following facts are either undisputed-i.e., not specifically controverted by Plaintiff in accordance with L. Civ. R. 56.1(c)-or are described in the light most favorable to Plaintiff. Immaterial facts are omitted.

1

down, and weight loss. *Id.* at 18-19. Plaintiff sought treatment for these symptoms from her doctors and ultimately underwent two diagnostic/dilation procedures and surgery to repair an area of gastric stricture. *See id.* at 55-57, 69-70. The operative note from the July 2007 surgery states that the operation performed was a "[t]akedown of the gastrojejunostomy with reconstruction." *Id.* at 65.

Plaintiff sought coverage of these 2008 doctor visits and medical procedures by submitting health insurance claims to the Plan. *See id.* 3-13. Coverage was denied for the vast majority of the monetary value of these claims. *See id.* 15-16, 20. Both BMI HealthPlans, Inc. ("BMI"), the third-party "Plan Supervisor," and JPMC, the employer and Plan administrator, premised the denial of coverage on the Plan's $15,000 lifetime limit for medical services connected with morbid obesity and their determination that the 2008 procedures resulted from a complication of the original 2005 gastric bypass. *See id.* at 50, 89; *see also id.* at 96, 121-22 (identifying BMI as "Plan Supervisor" and referring to "Plan Supervisor" and "Plan Administrator" roles). Plaintiff disagrees, arguing instead that the gastric obstruction was caused by stress and resulting chronic acid reflux. *See id.* at 57. After Plaintiff's administrative remedies were exhausted (*see id.* at 89), she filed her claim in this court (*see generally* Complaint, Docket No. 2).

B.   Procedural Background

Wesson filed her Complaint on August 31, 2009 in this court. *See* Docket No. 2. In the Complaint, Wesson states claims against all three defendants for (1) enforcement of ERISA benefits under the plan, and (2) breach of fiduciary duty. *See id.* at 6-7.

The initial[3] Administrative Record was filed with this court on April 23, 2010. *See* Docket No. 32. Subsequent to the filing of the Administrative Record, Defendant BMI filed its Motion for Summary Judgment. *See* Docket No. 40. BMI argues that it is not a proper party to this lawsuit as a matter of law, because ERISA law does not allow plan participants to sue non-fiduciary third-party administrators of the plan. *See* Motion for Summary Judgment at 7-12, Docket No. 40; Reply at 1-3, Docket No. 55. Plaintiff argues in response that BMI has acted outside its authority granted by the Plan language and is therefore

---

[3] Defendant BMI supplemented the Administrative Record on July 2, 2010. Thereafter, the court granted BMI's Motion to Amend the Administrative Record (Docket No. 53), and the Administrative Record was Amended again on April 14, 2010 (*see* Docket No. 64).

a *de facto* fiduciary of the plan. *See generally* Response, Docket No. 51. Thus, on this Motion for Summary Judgment, the court is presented with the issue of whether BMI is a fiduciary of the Jane Phillips Medical Center & Affiliates Employee Group Health Care Plan.

DISCUSSION

Federal Rule of Civil Procedure 56 provides the standard courts must use when determining whether summary judgment is proper. According to the rule, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); David P. Coldesina D.D.S., P.C. v. Estate of Simper, 407 F.3d 1126, 1131 (10th Cir. 2005) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

The dispositive issue in this motion is whether BMI qualifies as an ERISA fiduciary, because 10th Circuit precedent holds that non-fiduciary third parties cannot be sued for the recovery of benefits under ERISA. *See* Geddes v. United Staffing Alliance Emp. Med. Plan, 469 F.3d 919, 931 (10th Cir. 2006) (citing cases in accord from 7th, 9th, 3d, and 6th Circuits). It is undisputed that under the language of the Plan, BMI is not intended to be a fiduciary. *See* Admin Rec. at 121 (Plan language: "At no time will the Plan Supervisor act as a fiduciary of the plan or make decisions outside the Plan."); *see also* Motion for Summary Judgment at 8, Docket No. 40 (quoting language from Plan that BMI not intended to be fiduciary); Response at 2, ¶ 4, Docket No. 51 ("Wesson does not dispute that the language appears in the Plan, but does dispute that BMI acted in accordance with Plan language"). On its face, this fact militates in favor of granting summary judgment. However, Plaintiff argues against summary judgment by alleging that "[d]espite its formal title under the Plan, BMI acts as a *de facto* plan administrator and, both as a plan supervisor and/or *de facto* administrator, had a duty to comply with ERISA, and breached such duty." Response at 4, Docket No. 51. This allegation includes only one legitimate basis for BMI's vulnerability to suit, and that is Plaintiff's argument that BMI was a *de facto* fiduciary.[4]

---

[4] To the extent that Plaintiff's Response can be read to include an argument BMI is vulnerable to being sued as a result of its failure to comply with ERISA laws and regulations (*see* Response at 4-5, Docket No. 51; Reply at 3, Docket No. 55), such argument is unfounded. This court finds that the issue of whether BMI is a *de facto* fiduciary under the Plan is dispositive to the pending Motion for Summary Judgment. If BMI is found to be a fiduciary, then

Indeed, one must not be a "named fiduciary" under an ERISA plan to acquire fiduciary status. If a party assumes fiduciary obligations or exercises fiduciary functions, fiduciary status can be imputed under ERISA law, making that party a *de facto*[5] fiduciary. *In re* Luna, 406 F.3d 1192, 1201 (10th Cir. 2005) (citing Martens v. Hewitt Assocs., 508 U.S. 248, 262 (1993) ("ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan . . . .")). Thus, plaintiff's rebuttal is legally cognizable; despite the clear and contrary language of the Plan, BMI could be an ERISA fiduciary and therefore a proper party to this case. Accordingly, the court will proceed to the issue whether BMI is an ERISA fiduciary, the determination of which "is a mixed question of fact and law." *Coldesina*, 407 F.3d at 1131 (citing Hamilton v. Carell, 243 F.3d 992, 997 (6th Cir. 2001)). First the law will be considered, followed its application to the facts.

To determine whether a party has become a *de facto* fiduciary, courts consult the ERISA statute and regulations. ERISA Section 3(21)(A) provides:

> . . . [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphasis supplied). ERISA regulations elaborate on Section 3(21)(A) by providing various examples of functions that do not create fiduciary status, including in relevant part:

(1) Application of rules determining eligibility for participation or benefits;

---

Plaintiff's claims against BMI are legally cognizable. If, on the other hand, BMI is not found to be a fiduciary, then it is not vulnerable to suit under guiding ERISA law and precedent. *See* Geddes v. United Staffing Alliance Emp. Med. Plan, 469 F.3d 919, 931 (10th Cir. 2006). Furthermore, the court notes that if BMI is not found to be a fiduciary, it is then an agent for its co-defendant JPMC, the undisputed administrator of the Plan. *Cf.* Admin. Rec. at 156 ¶ 9.5 ("BMI, in performing its obligations under this agreement, is acting only as an agent of the Sponsor."). As such, JPMC would be liable for any of BMI's actions that contradicted ERISA law and/or resulted in a breach of JPMC's fiduciary duties. *See Geddes*, 469 F.3d at 926 ("[T]rust law does not require a fiduciary to delegate his authority only to other fiduciaries. Rather, the trustee is at liberty to delegate administrative tasks to 'agents' or 'other persons' as is necessary to carry out the purposes of the trust. A fiduciary's decision to delegate does not violate his responsibility to the trust beneficiary insofar as the fiduciary himself remains personally liable for any decisions taken on his behalf. In sum, the fiduciary is responsible for actions performed in his name. The same is true in the ERISA context.") (internal citations omitted).

[5] The process of becoming a fiduciary by way of one's actions is referred to as "the functional or de facto method." *In re* Luna, 406 F.3d 1192, 1201 (10th Cir. 2005).

      (2) Calculation of services and compensation credits for benefits;
      (3) Preparation of employee communications material;
      . . .
      (6) Calculation of benefits;
      . . .
      (8) Collection of contributions and application of contributions as provided in the plan;
      (9) Preparation of reports concerning participants' benefits;
      (10) Processing of claims; and
      (11) Making recommendations to others for decisions with respect to plan administration.

*See* 29 C.F.R. § 2509.75-8, D-2. ERISA and its regulations thus create a dividing line between certain services considered to be fiduciary and others that are merely ministerial.

The Tenth Circuit distinguished between fiduciary and ministerial actions in *David P. Coldesina, D.D.S., P.C. v. Estate of Simper*. Guided by ERISA Section 3(21)(A), the court stated,

> Plan management or administration confers fiduciary status only to the extent the party exercises *discretionary* authority or control. Discretion exists where a party has the "power of free decision" or "individual choice." On the other hand, non-discretionary or ministerial functions are those that do not require individual decisionmaking. These include tasks which by their nature are inherently ministerial, such as clerical services. *They also include those tasks that might otherwise require discretion but which are performed within the confines of plan policies and procedures.*

407 F.3d at 1132 (internal citations omitted) (first emphasis original; second emphasis supplied).

The court must now apply this law to the facts of the case to determine whether BMI operated as a fiduciary of Jane Phillips Medical Center & Affiliates Employee Group Health Care Plan. Plaintiff's Response appears to argue that, pursuant ERISA Section 3(21)(A)(iii), BMI is a fiduciary because has discretionary authority or responsibility in the administration of the plan. *See* Response at 4-5, Docket No. 51. Yet Plaintiff cites nothing in the Administrative Record or otherwise to support this allegation.[6]

---

[6] In fact, Plaintiff cites only three sources other than its own pleadings and briefs in its five-page Response. *See generally* Response, Docket No. 51. Incidentally, these citations are in reference to two of the citations that Defendant BMI made in its Motion for Summary Judgment. *See id.* at 2, 5. The Court agrees with BMI's assertion in its Reply (Docket No. 55 at 2), that Plaintiff has wholly failed to comply with NDOK L. Civ. R. 56.1(c) which instructs that the party opposing a summary judgment motion shall list all disputed facts and refer "with particularity to those portions of the record upon which the opposing party relies" with regard to those disputed facts. In fact, Plaintiff boldly cites itself to support its claim that BMI did not act in accordance with Plan language. *See* Response at 3, Docket No. 51 ("Wesson . . . disputes that BMI referred complied with such language. Most specifically, and as set forth in Wesson's chief Response Brief on the merits, BMI did not act 'in accordance with applicable ERISA regulations' as required by the Plan."). For obvious reasons, this reference does not aid the court in its determination of whether there is a genuine factual dispute, as it is based on allegation and not fact. Lacking reference to any supporting evidence from Plaintiff, the court is forced to independently evaluate the record for reliable evidence bearing on BMI's fiduciary status.

Looking to the facts as demonstrated by the Administrative Record, it does not affirmatively appear that BMI exercised any discretionary authority or responsibility as described in ERISA Section 3(21)(A). However it does appear that BMI undertook many of the non-fiduciary actions described in 29 C.F.R. § 2509.75-8. For example, the claims forms submitted by Plaintiff (Admin. Rec. at 3-13) demonstrate that BMI participated in processing claims, which is a non-fiduciary function listed at § 2509.75-8 at D-2(10). Further, the claims payment printouts (Admin. Rec. at 15-16) demonstrate that BMI undertook the non-fiduciary functions of calculating services and benefits, preparing reports regarding plan benefits, and processing claims (§ 2509.75-8 at D-2(2, 9, 10, respectively)).

The "explanation of benefits" letters provided to Plaintiff (Admin. Rec. at 163-180) and Plaintiff's initial request for review by BMI (Admin. Rec. 18-50) likewise do not show any fiduciary functions were undertaken by BMI. While these documents demonstrate that BMI was granted authority to apply the Plan rules to determine eligibility for benefits and the processing of claims (§ 2509.75-8 at D-2(1, 10, respectively)), such action is insufficient to demonstrate that BMI had any discretionary authority or control over plan administration. As the Tenth Circuit noted, even "tasks that might otherwise require discretion but which are performed within the confines of plan policies and procedures" are ministerial and non-fiduciary functions. David P. Coldesina, D.D.S., P.C., v. Estate of Simper, 407 F.3d 1126, 1132 (10th Cir. 2005) (citing IT Corp. v. Gen. Am. Life Ins. Co. 107 F.3d 1415, 1420 (9th Cir. 1997) (quoting 29 C.F.R. § 2509.75-8 at D-2)). Simply put, whether or not the EOB forms and initial appeal to BMI were completed in strict accordance with ERISA requirements,[7] there is no evidence in these documents that BMI exercised any fiduciary authority over the Plan.

This finding is buttressed by the communication between BMI and JPMC, which demonstrates that both parties considered JPMC to be the discretionary authority with regard to the application and interpretation of benefits. In the E-Mail exchange between BMI and JPMC representatives regarding Plaintiff's final appeal of the denial of benefits, BMI acts as a fact-finder by gathering information and medical records and evaluations. *See* Admin. Rec. at 82-87. BMI twice requests the JPMC representative

---

[7] *See supra* note 4.

to make the final determination as to whether Plaintiff's claims fall within Plan coverage. *Id.* at 82-83 (BMI representative addresses JPMC representative, "Once *you make your determination* . . . ." and "Once *the Plan* has made a decision . . . .") (emphasis supplied). These statements support the court's conclusion that BMI was not exercising fiduciary authority or control over the administration of the Plan. Despite Plaintiff's conclusory claims to the contrary, BMI appears to have acted within the confines of Plan policies and procedures when processing Plaintiff's claims, which is a non-fiduciary action. *See* 29 C.F.R. § 2905.75-8 at D-2(10); *Coldesina*, 407 F.3d at 1132.[8]

Therefore, based on the court's own thorough review of the undisputed Administrative Record,[9] the court finds no evidence that BMI is a *de facto* fiduciary.[10] Because BMI is a non-fiduciary third-party administrator of the Plan, it cannot be sued for the recovery of benefits under ERISA. Geddes v. United Staffing Alliance Emp. Med. Plan, 469 F.3d 919, 931 (10th Cir. 2006). It follows that because BMI is not

---

[8] Fully recognizing that the Plan language is not conclusive of the issue of whether a party is a *de facto* fiduciary (*See In re* Luna, 406 F.3d 1192, 1201 (10th Cir. 2005) (citing Martens v. Hewitt Assocs., 508 U.S. 248, 262 (1993)), the court notes that the language of the Plan is in accordance with the defendants' actions and the court's finding that there is no evidence that BMI undertook discretionary authority over the Plan, which specifically instructs,

> The Plan Supervisor [BMI] will act at the direction of the Plan Administrator and will make all decisions regarding the day-to-day administration of the Plan based on this Plan and in accordance with the standards set forth in the TPA Guide book. Any claims payment determination or administrative decision not defined by the Plan will be at the direction of the Plan Administrator . . . . At no time will the Plan Supervisor act as a fiduciary of the Plan or make decisions outside the Plan. The Plan Supervisor has no authority to change the Plan [or] approve new benefits . . . . The Plan Supervisor's authority shall be limited to the procedures set forth in the Plan as approved by the Plan Administrator.

Admin. Rec. at 121.
[9] *See supra* note 6.
[10] During the court's review of the Administrative Record, it noted some language in the Administrative Services Agreement between BMI and JPMC, which authorized select BMI employees to "pay claims" "by drafts or checks signed by authorized BMI employees on the Sponsor's account . . . ." Admin. Rec. at 152-53 ¶¶ 1.1, 1.3, 4.1. While there is at least one Tenth Circuit case which states that "acting as a signatory on behalf of a plan can indicate fiduciary control," that same case also recognizes that one must actually exercise this signatory authority before it has fiduciary relevance. *See* David P. Coldesina, D.D.S., P.C. v. Estate of Simper, 407 F.3d 1126, 1133 (10th Cir. 2005) (citing IT Corp. v. Gen. Am. Life. Ins. Co., 107 F.3d 1415, 1421-22 (9th Cir. 1997); LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997)). The court has no evidence other than the language of the Administrative Services Agreement to show that BMI actually authorized drafts or checks from the Plan account. Further, Plaintiff has not argued that this potential signatory authority makes BMI a fiduciary, despite conducting limited supplemental discovery into the financial structure of the Plan. *See* Plaintiff's Opening Brief at 2 n.1, Docket No. 42. As previously noted, when considering whether a party is a *de facto* fiduciary, one must look to the party's actions and not the Plan language itself. *See* In re *Luna*, 406 F.3d at 1201 (citing *Martens*, 508 U.S. at 262). Thus, since there is no evidence that BMI exercised its potential authority to draft checks from the Plan account, this language in the Administrative Services Agreement is insufficient proof that BMI undertook a fiduciary role.

a fiduciary of the Plan, it cannot be held liable for breach of fiduciary duty as a matter of law. The court finds that there is no genuine issue of material fact and BMI is entitled to judgment as a matter of law.

CONCLUSION

Therefore, BMI's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED this 30th day of September, 2011.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma